[No. E042838. Fourth Dist., Div. Two. Apr. 29, 2008.]

MARLON BRANDO ROMAN, a Minor, etc., Plaintiff and Appellant, v. LIBERTY UNIVERSITY, INC., et al., Defendants and Respondents.

**COUNSEL**

Martin A. Cervantes for Plaintiff and Appellant.

Veatch Carlson, Steve R. Segura and James C. Galloway, Jr., for Defendant and Respondent Liberty University, Inc.

C. Snyder Patin for Defendant and Respondent Shane Lucas Lancaster.

**OPINION**

**HOLLENHORST, J.—**

## I. INTRODUCTION

Plaintiff, Marlon Brando Roman, appeals from the trial court's orders granting the motion of defendant Liberty University, Inc. (Liberty), to quash service of summons for lack of personal jurisdiction and granting the motion of defendant Shane Lucas Lancaster (Lancaster) on the ground of forum non conveniens. We find no error, and we affirm.

## II. FACTS AND PROCEDURAL BACKGROUND

### A. *Plaintiff's Complaint*

Plaintiff, through his guardian ad litem, filed an action for personal injury damages against defendants in the Superior Court of the State of California, County of San Bernardino. Plaintiff thereafter filed a first amended complaint, referred to hereafter as the complaint.

The complaint alleged that Liberty's recruiting coordinator had come to Rialto, California, before June 5, 2003, to recruit plaintiff to play football for Liberty in Virginia. Liberty offered plaintiff a football scholarship and plaintiff accepted. Plaintiff executed Liberty's 2003–2004 Athletic Scholarship/Grant-in-Aid Agreement at his home in Rialto on June 8, 2003, and executed a revised agreement in Rialto on July 19, 2003. Thereafter, plaintiff attended Liberty and played first string defensive back for its football team.

The complaint alleged that, while at Liberty, plaintiff's roommate was defendant Lancaster, who also played football as a defensive back for Liberty's team. Plaintiff and Lancaster had a history of leaving campus to consume alcohol after curfew. Plaintiff was disciplined by the revocation of his athletic scholarship after he was caught sneaking back onto campus on December 19, 2003, after curfew. However, Liberty did not enforce the revocation, and plaintiff continued as a student at Liberty. In early 2004, plaintiff requested a new roommate assignment because of continuing problems with Lancaster; however, Liberty never addressed the request.

The complaint also alleged that on April 21, 2004, plaintiff and Lancaster went out drinking. During the evening, Lancaster physically assaulted plaintiff. Plaintiff started to walk back to campus and fell from a train trestle. He sustained catastrophic brain injuries.

In addition, the complaint alleged that Liberty breached a legal duty owed to plaintiff because Liberty failed to (1) separate plaintiff from Lancaster after plaintiff so requested; (2) revoke Lancaster's driving privileges; (3) remove Lancaster from the campus, although Lancaster was "a disruptive influence to the residential community"; (4) provide a "safe and supportive environment"; (5) establish a rapport with plaintiff and make him aware of his right to be separated from Lancaster; and (6) confront Lancaster "regarding his various major infractions." The complaint alleged that Liberty's breach of duty caused plaintiff to fall from the train trestle.

The complaint further alleged that Lancaster owed plaintiff an ordinary duty of care not to cause harm or injury to plaintiff, and Lancaster breached that duty by "physically assaulting [plaintiff], which in turn caused [plaintiff] to attempt to walk back to [the Liberty campus] on the night of April 21, 2004."

## B. *Liberty's Motion to Quash Service of Summons*

Liberty filed a motion to quash service of summons for lack of personal jurisdiction or, in the alternative, based on the doctrine of forum non conveniens.

Jerry Falwell, Jr., the vice chancellor and general counsel for Liberty, provided a declaration in support of the motion. Falwell's declaration states that Liberty is incorporated in Virginia and maintains its principal place of business in Virginia. Liberty has no employees in California, does not have an office or mailing address in California, does not own or lease any real property in California, is not registered or otherwise qualified to do business in California, and does not have an agent for service of process in California. Liberty does not pay any income, property, or use taxes to the state of California. Liberty does not manufacture any product that could find its way through the stream of commerce into California.

Falwell's declaration further states that coach Pete Sundheim had been the head of football recruiting for Liberty in 2004, and he had direct personal contact with plaintiff and Lancaster. Sundheim lives and works in Virginia. Coach Ed Gomes, the director of spiritual development for Liberty's football team, also had personal contact with plaintiff and Lancaster. Gomes also lives and works in Virginia.

Liberty also provided the declaration of Heather Sweitzer in support of the motion to quash service. Sweitzer's declaration stated that on April 21, 2004, she had been a student at Randolph-Macon Women's College in Virginia. About 11:30 p.m., when she was socializing with friends at a bar, she saw plaintiff "engaged in a heated discussion" with Lancaster. About 11:45 p.m., she left the bar and saw plaintiff and Lancaster arguing outside the bar. Sweitzer, who had not consumed any alcohol that evening, offered to give plaintiff a ride back to the Liberty campus. Plaintiff accepted the offer, and Lancaster departed; Sweitzer did not see Lancaster again. Before leaving for the campus, plaintiff walked with Sweitzer and her friends to a store to purchase food, and then the group walked to a restaurant. On the way to the restaurant, they crossed railroad tracks; plaintiff asked if the tracks led to the

Liberty campus. Sweitzer told plaintiff she thought they did, but she also told plaintiff that two students had died when they fell from a nearby railroad trestle. When the group arrived at the restaurant, about 30 minutes after they had left Lancaster at the bar, plaintiff said he intended to stay outside to smoke marijuana. Sweitzer did not see plaintiff again, although she went outside to look for him.

Liberty also provided the declaration of Lancaster in support of the motion to quash service. Lancaster's declaration stated he had last seen plaintiff about 11:30 p.m. on April 21, 2004, when plaintiff left the bar with several young women. Lancaster estimated plaintiff had consumed eight to 10 beers that night.

In opposition to the motion, plaintiff filed the declaration of Maria Roman, plaintiff's mother. Maria's declaration stated that Liberty's recruiting coordinator had come to Rialto, California, to recruit plaintiff to play football for Liberty, and Liberty offered plaintiff a football scholarship, which he accepted. Plaintiff executed the scholarship agreement and a revised scholarship agreement in California. Plaintiff has been a resident of California all his life. He is permanently disabled and unable to travel out of state to attend a lengthy trial. Maria stated she is plaintiff's primary caretaker and is unable to travel. All of plaintiff's medical providers are in California, and it would be difficult for his medical needs to be met in Virginia during a lengthy trial.

Plaintiff also filed the declaration of his attorney, Martin Cervantes. Cervantes's declaration stated he had received a letter from Liberty's insurance carrier denying plaintiff's claim on the basis that, in Virginia, the doctrines of contributory negligence and assumption of the risk are complete bars to recovery. A copy of the letter was attached as an exhibit to the declaration.

Following a hearing, the trial court granted the motion on the ground of lack of personal jurisdiction.

### C. *Lancaster's Motion to Quash Service of Summons*

Lancaster filed a motion to quash service of summons for lack of personal jurisdiction, or in the alternative, based on the doctrine of forum non conveniens.

In support of the motion, Lancaster filed a declaration that stated he had been a student at Liberty on April 21, 2004, and had been a citizen and resident of Virginia since April 19, 2006. He stated he had not lived in California since April 18, 2006, and he had no intention to live in California. He visited California only to spend holidays with his parents.

Plaintiff filed an opposition to the motion, supported by declarations similar to those filed in opposition to Liberty's motion.

Following a hearing, the trial court granted Lancaster's motion on the ground of forum non conveniens.

## III. DISCUSSION

### A. *Liberty's Motion*

Plaintiff contends the trial court erred in granting Liberty's motion to quash service of summons because Liberty purposefully availed itself of the privilege of conducting business in this state, and plaintiff's cause of action would not have arisen "but for" Liberty's contacts with this forum.

#### 1. *Standard of Review*

When a defendant moves to quash service of summons for lack of specific jurisdiction, the plaintiff bears the initial burden of demonstrating, by a preponderance of the evidence, facts justifying the exercise of jurisdiction. Once the plaintiff meets this initial burden, the burden shifts to the defendant to show that the exercise of jurisdiction would be unreasonable. When the evidence is not in conflict, whether jurisdiction exists is a question of law which this court reviews de novo. (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1062 [29 Cal.Rptr.3d 33, 112 P.3d 28] (*Snowney*).)

#### 2. *Analysis*

California courts may exercise jurisdiction on any basis not inconsistent with the Constitutions of the United States and California. (Code Civ. Proc., § 410.10.) Federal constitutional due process requirements dictate that a foreign defendant must have "minimum contacts" with the forum state such that maintenance of suit against the foreign defendant in the forum state would not offend " 'traditional notions of fair play and substantial justice.' [Citations.]" (*Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 66 S.Ct. 154].) If a defendant has sufficient contacts with the

forum state, it may be subject to suit there on all claims, wherever they arose (general jurisdiction). If the defendant's contacts with the forum state are not sufficient to support general jurisdiction, the defendant may nonetheless be subject to special jurisdiction, which depends on an assessment of the " 'relationship among the defendant, the forum, and the litigation.' " (*Helicopteros Nacionales de Colombia v. Hall* (1984) 466 U.S. 408, 414–415 [80 L.Ed.2d 404, 104 S.Ct. 1868]; see also *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 445–448 [58 Cal.Rptr.2d 899, 926 P.2d 1085] (*Vons*).)

Plaintiff does not contend that Liberty's contacts with the State of California were sufficient to confer general jurisdiction over Liberty. We therefore examine whether Liberty's contacts with the state were sufficient to establish special jurisdiction.

■ " 'A court may exercise specific jurisdiction over a nonresident defendant only if: (1) "the defendant has purposefully availed himself or herself of forum benefits" [citation]; (2) "the 'controversy is related to or "arises out of" [the] defendant's contacts with the forum' " [citation]; and (3) " 'the assertion of personal jurisdiction would comport with "fair play and substantial justice" ' " [citation].' [Citation.]" (*Snowney, supra,* 35 Cal.4th at p. 1062.)

Plaintiff argues that his case is governed by *State of Oregon v. Superior Court* (1994) 24 Cal.App.4th 1550 [29 Cal.Rptr.2d 909] (*State of Oregon*), overruled in *Vons, supra,* 14 Cal.4th at page 462, footnote 9. In *State of Oregon,* the court found specific personal jurisdiction over the State of Oregon, Oregon State University (OSU) based on OSU's head coach's having visited a basketball player at his high school campus in California to recruit the player for OSU's team. As a result of the recruitment efforts, the player decided to attend OSU. (*State of Oregon,* at p. 1554.) He returned to California because of academic ineligibility, and he suffered a stroke while playing a pickup game. He was treated in California and was advised to refrain from athletic activity until he was medically cleared. (*Ibid.*) The player's mother spoke with OSU's trainer, who gave assurances that if the player returned to OSU, he would be given the best available medical care, and OSU would find out the underlying problem because it had the best doctors and best treatment. (*Id.* at pp. 1554–1555.) When he returned to OSU, his anticoagulant medication was reduced, making him eligible to play. (*Ibid.*) While in Los Angeles to play against University of California, Los Angeles and University of Southern California, the player suffered a stroke while playing basketball and died. (*Id.* at p. 1555.) The court applied a "but for"

test to analyze the nexus between OSU's contacts with California and the injury suffered. (*Id.* at p. 1558.) The court held that because OSU had "undertaken recruitment activities directed at a specific California resident," and therefore "could reasonably expect to be subject to liability in California for injury resulting from those activities. Due process demands no more." (*Ibid.*)[1]

*State of Oregon* is easily distinguishable on its facts. The alleged injury in that case was directly related to the university's contact with California, and the plaintiff was in fact injured in California. (*State of Oregon, supra*, 24 Cal.App.4th at pp. 1555, 1557.)

More importantly, the California Supreme Court overruled *State of Oregon* in *Vons*. The *Vons* court stated, "[W]e are not persuaded that the 'but for' test provides an appropriate general standard, and consequently the reasoning of [*State of Oregon* and other cases] is disapproved to the extent it is inconsistent with this opinion." (*Vons, supra*, 14 Cal.4th at p. 465, fn. 8, citations omitted.)

Plaintiff contends, however, that *State of Oregon* was overruled only in the context of ongoing franchise relationships, and its "but for" test remains good law in other contexts. The court stated in *Vons*, "We are not persuaded it is productive to focus upon whether the injury would have occurred 'but for' the forum contacts, at least when an ongoing franchise relationship is the forum contact." (*Vons, supra*, 14 Cal.4th at p. 467.)

The California Supreme Court has more recently clarified that it intends to broadly apply the test announced in *Vons*. In *Snowney, supra*, 35 Cal.4th at page 1068, the court stated that after reviewing case law and policy considerations in *Vons*, it had adopted a " 'substantial connection' test and

---

[1] Plaintiff also relies on *Martin v. Detroit Lions, Inc.* (1973) 32 Cal.App.3d 472 [108 Cal.Rptr. 23] (*Martin*). That case involved a contract action between a professional football player and the Detroit Lions (the Lions) football team, a Michigan corporation. The plaintiff alleged that under his contract with the Lions, the Lions agreed to pay his salary if he became unable to play football as a result of injury sustained in the performance of his duties. The plaintiff was injured during a practice scrimmage, but the Lions refused to pay his salary. (*Id.* at p. 474.) The court found that California courts had general jurisdiction over the Lions. *Martin* is distinguishable on its facts. First, it involved breach of contract claims, not tort claims. (*Ibid.*) As the court stated in *Martin*, "the breach of a contract made and to be performed in the state" may be sufficient to support the exercise of personal jurisdiction. (*Id.* at p. 475.) Moreover, it was undisputed that the Lions team "derives a substantial part of its income from paying customers who attend professional football games," including games in California, and the team employed a scout who maintained a residence in California and conducted his activities in California. (*Ibid.*) Plaintiff has pointed to no similar factors that would support jurisdiction over Liberty in this case.

held that the relatedness requirement is satisfied if 'there is a substantial nexus or connection between the defendant's forum activities and the plaintiff's claim.' [Citation.]" We therefore conclude that *State of Oregon* no longer is good law with respect to its "but for" test for personal jurisdiction.

█ We first examine whether Liberty purposefully availed itself of the benefits of doing business in California such that it could expect to be subject to the jurisdiction of California courts. (*Snowney, supra,* 35 Cal.4th at p. 1062.) Plaintiff argues that not only did Liberty recruit plaintiff in California and offer him a scholarship, the agreement for which plaintiff executed in California, but also Liberty recruited defendant Lancaster in California to play football for Liberty. In addition, Liberty routinely recruits student athletes in California, and there are seven male students from California playing sports at Liberty. Finally, plaintiff argues that Liberty's Web site advertises an online degree program that allows students from any state to take courses.

Plaintiff has provided no evidentiary support for his contention that Lancaster was recruited in California; plaintiff cites only to his own argument in opposition to Liberty's motion to quash to support that contention. Moreover, Liberty's having seven California students on its team rosters provides no basis for special jurisdiction over Liberty in California because no showing was made that those students were recruited in California. Plaintiff has provided no evidence that Liberty has enrolled any California residents in its online degree program. Thus, the only conduct plaintiff has established was that Liberty's recruiting coordinator visited plaintiff in California to recruit him to play football for Liberty, and thereafter, Liberty mailed plaintiff a scholarship agreement and amended scholarship agreement that plaintiff executed in California. That conduct does not establish "purposeful availment."

In examining the second prong of the test for specific jurisdiction, the relatedness requirement (*Snowney, supra,* 35 Cal.4th at p. 1062), we find that the controversy is unrelated to and does not arise from Liberty's contacts with California. Plaintiff's claims are for personal injuries based on alleged activities that took place entirely within Virginia.

Plaintiff argues, however, that *Snowney* supports a finding of jurisdiction. However, like *Martin* and *State of Oregon, Snowney* is distinguishable on its facts. *Snowney* was a class action brought by a California resident against a group of Nevada hotels alleging causes of action for fraudulent business practices, breach of contract, unjust enrichment, and violations of Business

and Professions Code section 17500 et seq., based on the conduct of the hotels in failing to provide notice of an energy surcharge imposed on hotel guests. (*Snowney*, *supra*, 35 Cal.4th at pp. 1059–1060.) Although the hotels did not conduct business in California and had no bank accounts or employees in California, they advertised heavily in California and received a significant portion of their business from California residents. (*Id.* at p. 1059.) The court held both that (1) the conduct of the hotels established that the hotels purposefully and voluntarily directed their activities toward California such that they should expect to be subject to California courts' jurisdiction based on their contacts with this forum, and (2) the injury suffered by the plaintiff "relates *directly* to the content of defendants' advertising in California." (*Id.* at pp. 1067, 1070, original italics.) Thus, the court held that it would not be unfair or unreasonable to exercise jurisdiction over the hotels in this state. (*Id.* at p. 1070.)

Here, in contrast, plaintiff has shown only that Liberty's recruiter made a single visit to California, and the scholarship agreement and amended scholarship agreement were executed in this state. Moreover, the nexus between Liberty's activities in California and the injury plaintiff suffered is so attenuated as to be virtually nonexistent. *Snowney* does not support plaintiff's position.

We conclude the trial court did not err in granting the motion to quash for lack of personal jurisdiction.

### B. *Lancaster's Motion*

Plaintiff appeals from the trial court's granting of Lancaster's motion based on forum non conveniens. Plaintiff contends the law of Virginia provides no remedy at all because the statute of limitations has run, and Virginia's application of the doctrines of contributory negligence and assumption of the risk are complete bars to recovery. Plaintiff further contends the trial court abused its discretion by failing to balance the appropriate factors and make findings as to their applicability.

#### 1. *Standard of Review*

"Forum non conveniens is an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere." (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751 [1 Cal.Rptr.2d 556, 819 P.2d 14] (*Stangvik*).) In determining

whether to grant a motion based on forum non conveniens, the trial court must first determine whether a suitable alternate forum exists. (*Ibid.*) A forum is suitable if another court has jurisdiction, and there is no statute of limitations bar to the action. (*American Cemwood Corp. v. American Home Assurance Co.* (2001) 87 Cal.App.4th 431, 437 [104 Cal.Rptr.2d 670].) The determination whether a suitable forum exists is a legal question, subject to de novo review on appeal. (*Id.* at p. 436.)

■ If a suitable forum exists, "the next step is to consider the private interests of the litigants and the interests of the public in retaining the action for trial in California. The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses. The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation. [Citations.]" (*Stangvik, supra*, 54 Cal.3d at p. 751.) The defendant, as the moving party, bears the burden of proof. (*Ibid.*)

Ultimately, the decision whether to apply the doctrine of forum non conveniens rests within the discretion of the trial court (Code Civ. Proc., § 410.30, subd. (a)), and we will not disturb the trial court's decision on appeal in the absence of an abuse of discretion (*Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1464 [51 Cal.Rptr.3d 301]).

### 2. *Availability of a Suitable Alternative Forum*

Plaintiff contends that the trial court erred by failing to make a finding that a suitable alternative forum existed, and that in any event, Virginia is not a suitable alternative forum. With respect to the first contention that the trial court failed to make a finding on the issue, we simply observe that such a finding is implicit in the trial court's order granting the motion based on forum non conveniens. Moreover, our review of the issue is de novo (*American Cemwood Corp. v. American Home Assurance Co., supra*, 87 Cal.App.4th at p. 437), so the trial court's determination does not bind us. We will therefore turn to the merits of the issue.

■ The Judicial Council comment to Code of Civil Procedure section 410.30 states that an action should not be dismissed "unless a suitable

alternative forum is available to the plaintiff [citations]," such as when "the plaintiff's cause of action would elsewhere be barred by the statute of limitations, unless the court is willing to accept the defendant's stipulation that he will not raise the defense in the second state [citations]."

Plaintiff contends that under Virginia law, it is not clear whether the statute of limitations was tolled by the filing of this action in California. However, Lancaster's counsel has represented in the trial court and on this appeal that the statute of limitations would be tolled by plaintiff's action in California. We accept the representation of an officer of the court as equivalent, in binding effect, to a stipulation that Lancaster will not raise any statute of limitations defense in the Virginia action. (See, e.g., *Jurado v. Toys "R" Us, Inc.* (1993) 12 Cal.App.4th 1615, 1617–1618 [16 Cal.Rptr.2d 158] [counsel's representation in open court excused the requirement of an affidavit to support a motion to postpone trial under Code Civ. Proc., § 595.4]; *Davies v. Krasna* (1970) 12 Cal.App.3d 1049, 1056 [91 Cal.Rptr. 250] [defendant's conduct in the first action estopped him from raising the defense of res judicata in a subsequent action].)

Next, plaintiff argues that no suitable alternative forum is available because Virginia applies contributory, rather than comparative, negligence principles, and plaintiff's own negligence or assumption of the risk would completely bar his recovery under Virginia law. As a general rule, comparative law questions are irrelevant to a forum non conveniens analysis, except when the alternate forum "provides no remedy at all." (*Stangvik, supra,* 54 Cal.3d at pp. 754, 764.) Plaintiff has identified no bar to filing a negligence action in Virginia. If he proves his case, and proves that he was not contributorily negligent, he will be entitled to recover damages under Virginia law. " '[A] forum is suitable where an action "can be brought," although not necessarily won.' [Citation.]" (*Chong v. Superior Court* (1997) 58 Cal.App.4th 1032, 1037 [68 Cal.Rptr.2d 427].)

We conclude that another suitable forum is available for plaintiff's action.

### 3. *Balancing of Public and Private Interests*

If another suitable forum is available, the trial court must next balance the private interests of the litigants and the interests of the public in maintaining the action in California. (*Stangvik, supra,* 54 Cal.3d at p. 751.) Plaintiff argues that the trial court abused its discretion by failing to balance those factors and make findings on them.

The record shows that both parties briefed the relevant factors, and plaintiff's counsel argued those factors in the trial court at the hearing on the motion. We presume the trial court considered the appropriate factors, and plaintiff has pointed to no authority requiring the trial court to make explicit findings in ruling on a motion to dismiss or stay an action based on forum non conveniens.

" 'The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses. The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation.' [Citation.] No single factor is predominant. Instead, all factors should be weighed together. [Citation.]" (*Chong v. Superior Court, supra,* 58 Cal.App.4th at p. 1037.)

Plaintiff is a resident of California, and substantial weight must be given to his choice of forum in this state. (*Ford Motor Co. v. Insurance Co. of North America* (1995) 35 Cal.App.4th 604, 611 [41 Cal.Rptr.2d 342].) Nonetheless, the other private factors tilt in the opposite direction. Lancaster is a resident of Virginia, and trial of the action in Virginia would be more convenient and less costly for him. It is undisputed that most of the witnesses to the incident and the surrounding events reside in Virginia and are beyond the subpoena power of California courts. (Code Civ. Proc., § 1989.)

■ Turning to the public interests, we note that California courts have held that "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest." (*Hernandez v. Burger* (1980) 102 Cal.App.3d 795, 802 [162 Cal.Rptr. 564].) Plaintiff's injury occurred in Virginia, and Lancaster's allegedly negligent conduct took place in Virginia. In contrast, California courts have little interest in regulating conduct within Virginia's borders. (*Ibid.*)

Finally, because we have concluded the trial court properly granted Liberty's motion to quash service for lack of personal jurisdiction, Virginia is the only forum where all of plaintiff's claims may be brought in a single action, thus promoting judicial efficiency and economy.

We conclude the trial court did not err in granting Lancaster's motion to stay or dismiss the action for forum non conveniens.

## IV. DISPOSITION

The orders appealed from are affirmed. Respondents to recover costs on appeal.

Ramirez, P. J., and McKinster, J., concurred.