Filed 3/5/14 Nash v. Vincent CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JAMES NASH et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>MARLEU VINCENT et al.,<br><br>    Defendants and Respondents. | A133271<br><br>(San Francisco County<br>Super. Ct. No. CGC10500027) |

**INTRODUCTION**

Plaintiffs James Nash and Diane Lambert-Nash appeal from an order of the San Francisco Superior Court granting a motion to quash service of summons for lack of personal jurisdiction on defendants Marleu Vincent and Pauline Arbot,[1] residents of Montreal, Canada. Defendants appeared specially to contest jurisdiction over them in plaintiffs' action for injuries suffered when plaintiff James Nash fell two stories after a balcony railing on defendants' home collapsed while plaintiffs were visiting. We shall affirm.

**BACKGROUND**

Plaintiffs and defendants have been friends for many years. Defendants are Canadian citizens, who live in Montreal, Province of Quebec, Canada. They have friends who live in California, with whom they correspond by e-mail. Otherwise, they have no

_____

[1] Pauline Arbot is also known as Pauline Arbour.

1

regular contact in this state.  Plaintiffs moved to California in 1977 and have lived in San Francisco for nearly 35 years.  Lambert-Nash and Arbot maintained telephone and e-mail communications on a regular basis (at least monthly for about the past 10 years).  At defendants' invitation, plaintiffs visited them numerous times at defendants' Canadian property.

In September 2008, on one of the Nashes' visits to defendants' Quebec home, plaintiff James Nash was severely injured when he fell to the ground from a balcony.  Plaintiffs alleged on information and belief that the fall was caused by rotted wood.  When he leaned against the railing, it gave way, causing him to fall to the ground below.

On May 20, 2010, plaintiffs filed a complaint for damages against defendants in San Francisco Superior Court, alleging defendants' Canadian home was negligently built and maintained.[2]  Plaintiff Lambert-Nash also alleged a cause of action for loss of consortium arising from her husband's injuries and for emotional distress she suffered as a result of witnessing her husband's fall.  The complaint sought both compensatory and punitive damages.

Jurisdiction is alleged in the complaint based upon allegations that defendants "consented to jurisdiction in the California Superior Court . . ." and that they "have regular and systematic contacts with the State of California."  The complaint does not allege what those contacts might be.

On June 13, 2011, defendants were served with the Summons and Complaint, as well as other documents.

On July 12, 2011, defendants specially appeared and filed their motion to quash service of summons and complaint.  They asserted that service was improper under the Hague Service Convention; that defendants did not consent to the California court's jurisdiction; and that defendants did not have sufficient minimum contacts with California to establish general jurisdiction.

---

[2] Plaintiffs also included as a defendant, ACS Recovery Systems (ACS), which they maintain was a collection service retained by plaintiffs' health insurer.  ACS was not a party to the motion to quash below and is not a party to this appeal.

2

Plaintiffs opposed the motion to quash. They asserted that "in an abundance of caution" they were "having the Summons and Complaint re-served by an expert in Hague Convention Service" and expected proper service would be completed before hearing on the motion to quash, which they argued would moot any original defects in service. (On July 26, 2011, two weeks before the motion to quash hearing, plaintiffs apparently served defendants with the documents required by the Hague Service Convention.) Plaintiffs did not reassert their allegation that defendants had consented to jurisdiction. Rather, they principally relied upon "specific" jurisdiction, asserting that when minimum contacts are analyzed under that concept, out-of-state defendants' contacts with the forum need not be "continuous and systematic" where defendants purposefully established contacts in California and where plaintiffs' cause of action arose out of or was related to the defendants' contacts with California. Plaintiffs maintained such was the case here, based upon the defendants' "extensive and expansive communications with [p]laintiffs in California, including a standing invitation" to visit defendants' property in Canada, as plaintiffs had done many times before, and which was the place where James Nash was injured. Plaintiffs also asserted the relative burdens on defendants of litigating in San Francisco would be minimal, but the burdens on plaintiffs of litigating in Canada would be extreme.

Vincent and Lambert-Nash filed declarations more specifically addressing the question of personal jurisdiction and defendants' motion to quash. There is nothing in the declarations indicating that defendants ever consented, either verbally or in writing, to the jurisdiction of the California courts and their declaration flatly denies defendants consented to jurisdiction It is undisputed that aside from telephone and e-mail correspondence to keep in touch with friends who reside in California, defendants have no regular contact with the state.

In her declaration, plaintiff Lambert-Nash states she and defendant Arbot maintained telephone and e-mail communications on a regular bases (at least monthly) over the last 10 years; that plaintiffs were at defendants' property at defendants' invitation and have a standing invitation to visit; that they have not visited defendants

3

since the accident, due to plaintiffs' serious health issues; that plaintiffs and defendants have ongoing communications; and that plaintiffs seek only compensation from defendants' insurer, not from defendants personally. Lambert-Nash also states that, not long after the injury, James Nash was flown back to San Francisco, "where he has undergone extraordinary medical treatment, much of which continues." His "ability to ambulate is still severely compromised." She describes the treatment Nash has received and will continue to receive and states that such treatment "has involved as many as twenty, separate healthcare providers with different functions." She further states that Nash is in need of "continuous medical treatment and follow-up appointments for the foreseeable future and that it would create substantial hardship for us to have to travel to Canada for extended litigation while [he] is undergoing this necessary treatment which needs to be ongoing and integrated." She also states plaintiffs cannot afford the financial expense of travel to Canada to litigate the case and that they would be severely burdened by their health limitations, including her own health issues. Finally, she also states that as Nash's pre-injury employment was in the Bay Area, all evidence relating to his sizeable earnings loss is in the Bay Area.

Following a hearing, the court granted defendants' motion to quash on the ground that "[p]laintiffs failed to meet their burden of proving sufficient minimum contacts with the State of California to subject [defendants'] to the Court's jurisdiction. Additionally, [p]laintiffs presented no evidence of [defendants'] alleged contractual consent to the Court's jurisdiction. Finally, when serving [defendants], (Canadian citizens residing in Montreal, Quebec), [p]laintiffs failed to comply with the provisions of the [Hague Service Convention]."

Notice of entry of the court's order was filed on September 1, 2011, and this timely appeal followed.

4

## DISCUSSION

Plaintiffs contend the trial court erred in granting defendants' motion to quash service of summons.

### A.  *Standard of Review*

"When a defendant moves to quash service of summons for lack of specific jurisdiction, the plaintiff bears the initial burden of demonstrating, by a preponderance of the evidence, facts justifying the exercise of jurisdiction.  Once the plaintiff meets this initial burden, the burden shifts to the defendant to show that the exercise of jurisdiction would be unreasonable.  When the evidence is not in conflict, whether jurisdiction exists is a question of law which this court reviews de novo.  (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1062 (*Snowney*).)"  (*Roman v. Liberty University, Inc.* (2008) 162 Cal.App.4th 670, 677-680 (*Roman*).)

### B.  *The law—"minimum contacts"*

California courts may exercise jurisdiction on any basis not inconsistent with the Constitutions of the United States and California.  (Code Civ. Proc., § 410.10.)  "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same.  [Citations.]"  (*Dole Food Company, Inc. v. Watts* (2002) 303 F.3d 1104, 1110 (*Dole*).)  "Federal constitutional due process requirements dictate that a foreign defendant must have 'minimum contacts' with the forum state such that maintenance of suit against the foreign defendant in the forum state would not offend ' "traditional notions of fair play and substantial justice." [Citations.]'  (*Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316 [(*International Shoe*)].)  If a defendant has sufficient contacts with the forum state, it may be subject to suit there on all claims, wherever they arose (general jurisdiction).  If the defendant's contacts with the forum state are not sufficient to support general jurisdiction, the defendant may nonetheless be subject to special jurisdiction, which depends on an assessment of the ' "relationship among the defendant, the forum, and the litigation." ' (*Helicopteros Nacionales de Colombia v. Hall* (1984) 466 U.S. 408,

5

414-415; see also *Vons Companies, Inc. v. Seabest Foods, Inc*. (1996) 14 Cal.4th 434, 445-448 (*Vons*).)" (*Roman, supra,* 162 Cal.App.4th at pp. 677-678.)

" 'When determining whether specific jurisdiction exists, courts consider the " 'relationship among the defendant, the forum, and the litigation.' " [Citation.] A court may exercise specific jurisdiction over a nonresident defendant only if: (1) "the defendant has purposefully availed himself or herself of forum benefits" (*Vons, supra,* 14 Cal.4th at p. 446); (2) "the 'controversy is related to or "arises out of" [the] defendant's contacts with the forum' " [citations]; and (3) " 'the assertion of personal jurisdiction would comport with "fair play and substantial justice" ' " (*Vons, supra,* 14 Cal.4th at p. 447, quoting *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472-473 [(*Burger King*)].)' [Citation.]" (*Snowney, supra,* 35 Cal.4th at p. 1062; accord, *Roman, supra,* 162 Cal.App.4th at p. 678.)

"Once it has been decided that a defendant purposefully established minimum contacts with a forum, 'he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' in order to defeat personal jurisdiction [Citation.]" (*Dole, supra,* 303 F.3d at p. 1114, citing *Burger King, supra,* 471 U.S. at p. 477.)[3]

Although plaintiffs argue that defendants maintained regular, extensive contacts with them for decades, they do not appear to assert the court erred in finding against them on either the "consent" or "general jurisdiction" grounds. Rather, they argue they made a prima facie case of defendants' minimum contacts with California sufficient to satisfy the requirements for asserting "specific jurisdiction" over defendants. Plaintiffs also assert

---

[3] In determining "reasonableness" courts must consider factors including, the extent of defendant's purposeful interjection into the forum; the burden on defendant in defending in the forum; the extent of conflict with the sovereignty of the defendant's state; the forum state's interest in adjudicating the dispute; the most efficient judicial resolution of the controversy; the importance of the forum to plaintiff's interest in convenient and effective relief; and the existence of an alternative forum. (See *CE Distribution, LLC. v. New Sensor Corp.* (9th Cir. 2004) 380 F.3d 1107, 1112; Schwarzer et al., Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2013) ¶ 3:142.)

more broadly that the exercise by California of personal jurisdiction over defendants in this case "comports with 'fair play and substantial justice.' " We therefore focus on the "specific jurisdiction" formulation of the minimum contacts analysis.

## C. "Specific jurisdiction"

In asserting that they made a prima facie case for specific jurisdiction, plaintiffs rely on their history of e-mail and other contacts with defendants, the open invitation extended by defendants to visit defendants' Ontario property, and that plaintiffs' injuries occurred as a result of such a visit.

In addition, plaintiffs point to numerous factors that they urge demonstrate California's assertion of jurisdiction in this case is "reasonable" and comports with due process standards of "fair play and substantial justice." (*International Shoe, supra,* 326 U.S. at p. 316.) Among the "fairness" and "reasonableness" factors plaintiffs proffer, are their assertion that the case is "essentially only about damages" and thus, virtually all of the evidence (including health care providers, evidence of James Nash's economic damages and the plaintiffs, themselves) is located in California; the economic and physical burden on plaintiffs to travel to Canada to litigate, especially given their health issues; and the numerous differences plaintiffs assert exist between Canadian and California law with respect to the right to jury trial, the collateral source rule, insurer "bad faith" jurisprudence, and the length of time in taking the case to trial, among other things, that plaintiffs maintain result in "massive legal disadvantages" to plaintiffs in a case where economic damages to date may approach policy limits.

However, these additional factors relating to the "reasonableness requirement"— the requirement of "fair play and substantial justice"—are not part of the initial "minimum contacts" analysis. Rather, they are part of the considerations at play only *after* plaintiffs have carried their burden of showing at least "minimum contacts," should defendants maintain that *despite* such "minimum contacts," the presence of other considerations would render jurisdiction "unreasonable." (*Dole, supra,* 303 F.3d at p. 1114; see *Vons, supra,* 14 Cal.4th at pp. 475-476 ["Having determined that defendants did establish minimum contacts with California, we finally must consider whether the

7

assertion of specific jurisdiction is fair. [Citation.] In this connection, a court 'must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." ' [Citations.]"]; see Schwarzer et al., Cal. Practice Guide: Federal Civil Procedure Before Trial, *supra,* ¶¶ 3:116.5, 3:141 [if plaintiff establishes *both* that the out-of-state defendant purposefully directed its activities toward residents of the forum *and* that plaintiff's cause of action "arises out of" or "results from" the defendant's forum-related contacts, defendant must come forward with a "compelling case" that the exercise of jurisdiction would be "unreasonable" to defeat jurisdiction, such that the assertion of jurisdiction in the forum state in the particular case would not "comport with fair play and substantial justice"].)

Defendants' *only* contacts with California at evidence in this case are the regular telephone and e-mail communications between defendants and plaintiffs ("at least monthly") over many years and, arguably, that plaintiffs have a "standing invitation to visit defendants in Canada" and were at the property at defendants' invitation. We are not persuaded that by such casual phone and e-mail contacts defendants "purposefully availed" themselves of forum benefits. (*Vons, supra,* 14 Cal.4th at p. 447.) Nor are we persuaded that any of the plaintiffs' causes of action is "related to" or "arises out of" these contacts with California. (*Ibid.*)

In order to establish minimum contacts under the "specific jurisdiction" formulation, "the nonresident defendant must have purposefully directed its activities at forum residents, or purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of local law. [Citations.]" (Schwarzer et al., Cal. Practice Guide: Federal Civil Procedure Before Trial, *supra,* ¶ 3:117, citing *Hanson v. Denckla* (1958) 357 U.S. 253-254; *Kulko v. Superior Court* (1978) 436 U.S. 84, 94.) This requirement "assures that a nonresident will be aware that it is subject to suit in the forum state. It can then protect against the

8

costs of litigating there by purchasing insurance; or, if the costs and risks are too great, by severing its connections with the forum state. [Citation.]" (*Id.* at ¶ 3:118, citing *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 297.) Unlike business contacts or commercial relationships where purposeful availment results in concrete benefits or invocation of the protections of the forum law such that the nonresident will be aware that it may be subject to suit in the forum state, the type of personal communications at evidence in the instant case would not put defendants on notice that they might be haled into court in California for injuries suffered by the visiting friends in their Canadian home.

Nor can we conclude here that the plaintiffs' causes of action are sufficiently "related to" or "arise out of" defendants' contacts with the forum. (*Vons, supra,* 14 Cal.4th at p. 447.) Although the tests are related, the Supreme Court has not yet decided what constitutes sufficient "relatedness" for specific jurisdiction. (Schwarzer et al., Cal Practice Guide: Federal Civil Procedure Before Trial, *supra,* ¶ 3:136.) However, California has rejected the "but for" test, which would substantially expand the scope of limited jurisdiction, in favor of a "substantial connection" test, holding "that the relatedness requirement is satisfied if 'there is a substantial nexus or connection between the defendant's forum activities and the plaintiff's claim.' [Citation.]" (*Snowney, supra,* 35 Cal.4th at p. 1068; accord, *Roman, supra,* 162 Cal.App.4th at p. 680.)

In *Roman, supra,* 162 Cal.App.4th 670, the Court of Appeal agreed with the trial court that a university's contacts with California were insufficient to establish personal jurisdiction. In that case, a student who had been recruited to play football at Liberty University in Virginia was allegedly assaulted by his roommate before falling and suffering brain injuries. Plaintiff contended the university had purposely availed itself of the privilege of conducting business in California. The appellate court rejected that contention, stating: "[T]he only conduct plaintiff has established was that Liberty's recruiting coordinator visited plaintiff in California to recruit him to play football for Liberty, and thereafter, Liberty mailed plaintiff a scholarship agreement and amended

9

scholarship agreement that plaintiff executed in California. That conduct does not establish 'purposeful availment.'" (*Id.* at p. 680.)

In examining the second prong of the test for specific jurisdiction—the relatedness requirement—the *Roman* court observed that the California Supreme Court in *Snowney, supra,* 35 Cal.4th at page 1062, had rejected a "but for test" and other tests and "had adopted ' "a substantial connection" test and held that the relatedness requirement is satisfied if "there is a substantial nexus or connection between the defendant's forum activities and the plaintiff's claim." [Citation.]' " (*Roman, supra,* 162 Cal.App.4th at pp. 679-680.) The Court of Appeal found the controversy was "unrelated to and does not arise from Liberty's contacts with California. Plaintiff's claims are for personal injuries based on alleged activities that took place entirely within Virginia." (*Id*. at p. 680.)

That is even more true in this case, where there was no evidence defendants ever traveled to California, no contract between the parties was involved, and the relationship between the casual and personal e-mail and phone contacts here were even more attenuated than that between the University that recruited the student to play football in Virginia and defendants here, who extended an "open invitation" to plaintiffs to visit.

Any doubt on this score would be put to rest by *Walter v. Superior Court* (1986) 178 Cal.App.3d 677. In that case, the appellate court overturned the trial court's refusal to grant a motion to quash service of summons in a breach of contract action brought by a California woman against a New Jersey resident. The lawsuit maintained that the New Jersey resident, in a series of telephone calls, had induced the plaintiff to leave her job and apartment in California to become his companion and confidante by promising that he would support her for the rest of her life, provide her with medical insurance, pay her a large sum of money and buy her a car. (*Id.* at p. 679.) The trial court found the plaintiff had established the defendant's "minimum contacts" with California in that the defendant's conduct had caused or resulted in substantial economic effect in California, little or none in New Jersey, that the "[d]efendant contacted plaintiff not infrequently or even occasionally, but innumerable times over a period of months, making telephone calls from New Jersey to plaintiff in California," and that the defendant sent money from

10

New Jersey to plaintiff in California. Consequently, the trial court found the defendant had " 'purposefully directed' his activities at a resident of the forum, and hence ha[d] 'fair warning' that California would seek to assert jurisdiction over such a claim. [Citation.]" (*Id.* at p. 680.) The Court of Appeal reversed on the grounds that the New Jersey resident did no business in California and never traveled here, that the contract alleged was not to be performed in California, and that if breached, the contract breach occurred in New Jersey, not California.[4] Although the plaintiff invoked jurisdiction on the basis that defendant's act had "caused an effect" in this state, the appellate court observed that, "an act 'having an effect' in the forum state is not necessarily synonymous with an act which 'affects' a California resident. [Citation.]" (*Id.* at pp. 680-681.) In a statement directly relevant to this case, the appellate court concluded: "[The defendant] had no connection with California whatsoever, other than his telephone calls to plaintiff, and he certainly could not have anticipated being 'haled into Court' here should the agreed-to arrangement prove unsatisfactory." (*Id.* at p. 681.) "The fact that [the defendant] called [the plaintiff] in California 'innumerable times over a period of months' is likewise insufficient to establish our court's jurisdiction over a nonresident. [Citations.] The fact that real party gave up her job and apartment 'in California' is irrelevant; it is [the defendant's] activity, and not that of [the plaintiff], which is the key element in the determination of jurisdiction. [Citation.]" (*Id.* at p. 682.) Finally, the Court of Appeal acknowledged it was "not unmindful of the fact that plaintiff asserts she cannot afford to maintain a lawsuit in New Jersey while [defendant], she claims, is

---

[4] The appellate court also distinguished other cases in which the "effects" test was found to provide sufficient basis for jurisdiction, such as *Calder v. Jones* (1984) 465 U.S. 783—a libel action involving the publication of a story containing libelous statements concerning the California activities of a California resident, read by thousands of individuals in this state, where the focal point of the story and the harm suffered were in California. "Such is not the case here. . . . This is a private dispute between two individuals which neither the general population of California nor the California courts have any particular interest (aside from providing a forum for plaintiff, a California resident.)" (*Walter v. Superior Court, supra,* 178 Cal.App.3d at p. 681.)

wealthy and can afford to defend the present action in California. We sympathize with plaintiff but cannot resolve a constitutional issue based upon sympathy for a litigant." (*Id.* at p. 682.)

Similarly, in *Inselberg v. Inselberg* (1976) 56 Cal.App.3d 484, telephone calls between Michigan defendants and the plaintiff's daughter in California, that could have played some role in inducing the daughter to leave her father and return to the defendants in Michigan, were held insufficient to support jurisdiction over defendants in California, even where the defendants were alleged to have furnished the cost of transportation to the daughter to help her to leave. (*Id.* at pp. 489-490.)

Defendants argue that minimum contacts may be created by the non-resident's use of e-mail or telephone, citing *Hall v. LaRonde* (1997) 56 Cal.App.4th 1342 (*Hall*). There, LaRonde, a New York resident, was alleged to have breached a contract for sale of licenses for the use of a computer software application. All business between Hall (the California plaintiff) and LaRonde was conducted via electronic mail and telephone. In finding sufficient minimum contacts to allow the assertion of personal jurisdiction in California, the appellate court observed: "LaRonde's contacts with California consisted of more than simply purchasing a software module from Hall. LaRonde worked with Hall to integrate the module into LaRonde's software package. Even after the initial adaptation was finished, LaRonde continued to work with Hall to modify the module for new and existing software. In addition, the contract contemplated that LaRonde would make continuing royalty payments to Hall. Thus, LaRonde created a ' "continuing obligation[]" ' between himself and a resident of California. (*Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at pp. 475-476.) [¶] LaRonde's contacts with California were more than ' "random," "fortuitous," or "attenuated." ' [Citation.] . . . LaRonde purposefully derived a benefit from the interstate activities. [Citation.] It is fair to require that he account in California for the consequences that arise from such activities." [Citation.]" (*Hall, supra*, at p. 1347.)

*Hall* is clearly distinguishable as involving business activities in which electronic communications played a key role in the parties'

12

conduct of business and in carrying out their respective obligations under the contract between them, such that the court could conclude that the defendant "purposely derived a benefit from interstate activities." (*Hall, supra,* 56 Cal.App.4th at p. 1347.)

*Jamshid-Negad v. Kessler* (1993) 15 Cal.App.4th 1704, relied upon by plaintiffs, is also clearly distinguishable. There, the plaintiffs alleged that the nonresident defendants' son, who was attending a campus of the University of California, attempted to break into their apartment, while intoxicated. (*Id.* at p. 1707.) The appellate court held that "in light of the Legislature's intent to protect California citizens from the willful misconduct of minors by specifically regulating parental supervision, that nonresident parents who send their minor child to obtain an education at a public institution cause a sufficient effect in California to enable its courts to exercise specific personal jurisdiction over them." (*Id.* at pp. 1706-1707.) The court invoked the "effects" test described as follows: " '[W]e conclude it is reasonable to exercise jurisdiction on the basis of the defendant intentionally causing "effects in the state by an omission or act done elsewhere" whenever (a) the effects are of a nature "that the State treats as exceptional and subjects to special regulation," or (b) the defendant has, in connection with his causing such effects in the forum state, invoked "the benefits and protections of its laws." ' (*Quattrone v. Superior Court* (1975) 44 Cal.App.3d 296, 306.)" (*Jamshid-Negad v. Kessler*, at p. 1708.) Neither condition applies to the facts of the instant case.

On the evidence presented here, we must conclude that plaintiffs have failed to meet their burden of showing facts justifying the exercise of personal jurisdiction over defendants. Because plaintiffs have not shown defendants had the "minimum contacts" with California required to support the exercise of personal jurisdiction, we do not examine whether defendants nevertheless could show that jurisdiction was "unreasonable."[5] Nor do we address the question of proper service of process under the Hague Convention.

---

[5] We hereby deny plaintiffs' pending request for judicial notice filed June 19, 2013, relating the current status of plaintiffs' action against defendants in Montreal and counsel's estimate of the earliest possible trial date.

## DISPOSITION

The order quashing service of summons is affirmed. Defendants are awarded their costs on appeal.

_____
Kline, P.J.

We concur:

_____
Haerle, J.

_____
Richman, J.