Filed 1/14/14  Butler v. Mararishi U. of Management CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| KHALDUN BUTLER et al., | |
| Plaintiffs and Appellants, | E054846 |
| v. | (Super.Ct.No. INC056979) |
| MAHARISHI UNIVERSITY OF MANAGEMENT, | O P I N I O N |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Randall Donald White, Judge.  Affirmed.

Domine Adams, Jason M. Adams, Jeffrey B. Domine, Ryan P. Sheahan; Belin McCormick, Stephen R. Eckley, David W. Nelmark; Coppola, McConville, Coppola, Hockenberg & Scalise and Lawrence F. Scalise for Plaintiffs and Appellants.

Musick, Peeler & Garrett, Cheryl A. Orr and Kent A. Halkett for Defendant and Respondent.

1

# I. INTRODUCTION

The present appeal deals with whether the Riverside County Superior Court can exercise its jurisdiction over defendant and respondent, Maharishi University Management (MUM), an Iowa corporation and California nonresident. We conclude the court did not have personal jurisdiction over MUM and properly dismissed plaintiffs' complaint against MUM for lack of personal jurisdiction.

In August or September 2003, Levi Butler, a California resident, enrolled as a student at MUM in Iowa. In March 2004, Shuvender Sem, another student at MUM, stabbed Levi with a knife in a campus dining hall, and Levi died from his injuries. Levi was 19 years old. On February 24, 2006, Levi's estate, through its personal representative Joshua Butler, Levi's brother, filed a wrongful death action in the United States District Court for the Southern District of Iowa against MUM and other defendants (the Iowa action). Three days later, plaintiffs and appellants, Khaldun Butler and Evelyn Butler, Levi's parents, filed the present action in the Riverside County Superior Court against MUM and other defendants, claiming damages for wrongful death, negligence, premises liability, fraudulent misrepresentation, negligent misrepresentation, breach of contract and violations of the Consumer Legal Remedies Act and unfair business practices not recoverable in the Iowa action.[1]

---

[1] Plaintiffs maintain they could not have been made whole by bringing their claims against MUM in Iowa. When the limitations period on plaintiffs' claims expired in 2006, two years after Levi's 2004 death, Iowa law did not allow the parents of an adult decedent over the age of 18, such as Levi, to recover noneconomic damages. (*Counts v. Hospitality Employees, Inc.* (Iowa 1994) 518 N.W.2d 358, 361.) In 2007, the Iowa

*[footnote continued on next page]*

On MUM's motion, the present action was removed to the United States District Court for the Central District of California in March 2006, but was remanded to the superior court less than a month later. Before remand, MUM moved to transfer venue to the federal court in Iowa, where the Iowa action was pending. Upon remand, the superior court stayed the present state court action pending the outcome of the Iowa action. The stay was lifted after the Iowa action was resolved. Then, on September 21, 2011, and pursuant to MUM's motion, the superior court dismissed plaintiffs' complaint for lack of personal jurisdiction over MUM and other nonresident defendants.

Plaintiffs appeal from the judgment dismissing the state court action. They claim MUM waived its right to object to the state court's personal jurisdiction when MUM moved to transfer venue of the present action to the federal district court in Iowa. They also claim the superior court erroneously concluded that MUM was not subject to the superior court's general or specific jurisdiction. We reject each of these claims and affirm the judgment of dismissal.

## II. BACKGROUND

A. *The Allegations of Plaintiffs' Complaint*

Levi Butler was born in 1985 and is plaintiffs' youngest son. In July 2003, Levi's brother suggested he consider attending MUM because of its emphasis on spreading

---

*[footnote continued from previous page]*
legislature adopted Iowa Code section 613.15A, allowing the parents of an adult child to recover damages for loss of companionship. By 2007, it was too late for plaintiffs to file an action in Iowa for Levi's loss of companionship because the two-year limitations period had expired.

3

peace, resolving conflicts, and living sustainably. In August 2003, MUM notified Levi that he had been accepted for admission. The guiding philosophy and core curriculum of MUM are based on the teachings of its founder, Maharishi Mahesh Yogi. MUM's primary mission is to teach the principles of Transcendental Meditation (TM). Students at MUM are indoctrinated through a mandatory regimen of twice daily meditation, coupled with intensive studying of the teachings of the "Maharishi."

In January 2004, another new student, Shuvender Sem, arrived at MUM's Iowa campus. Sem, then age 24, had a history of mental illness and violent assaults. MUM allegedly failed to identify Sem's past history of violence and mental illness before he stabbed Levi to death on March 1, 2004. During the six weeks Sem was on campus, his behavior toward other students became increasingly bizarre and aggressive. He threatened to kill a fellow student by bashing his head into a sink, then stomping on him.

On March 1, 2004, and before he attacked Levi, Sem attacked another student while a group of students and faculty members were participating in a meditation class. Sem became agitated and left the room, returned a few moments later, and stabbed the other student in the face and throat with a pen. Another student grabbed Sem to stop the attack.

A few faculty members, including Dr. Robert Boyer, a clinical psychologist, were notified of the attack. Dr. Boyer advised that Sem was dangerous and should be kept off campus. The faculty did not inform other students of the attack, nor did they notify state officials. Instead, MUM handled the matter internally. MUM tried unsuccessfully to

find a student living off campus who would be willing to lodge Sem for a probationary period. MUM decided to return Sem to his home in Philadelphia.

Sem was placed in the custody of Joel Wysong, the Dean of Men at MUM. Wysong took Sem to Wysong's apartment on campus. Wysong called Sem's parents and arranged for him to fly home to Philadelphia the next day. At his apartment, Wysong observed Sem clapping his hands loudly and pacing about. Wysong left Sem in the kitchen while he went to another room to meditate. Wysong heard Sem rummaging around in kitchen drawers and, after meditating, he noticed Sem had left the apartment. He did not notify campus security or state officials; he went to find Sem himself. He found Sem at a campus dining hall, but rather than removing Sem or requesting security, he allowed Sem to mingle with the other students.

In the dining hall, Sem moved from a table with several students to a seat next to Levi, and asked Levi where he was from. As Levi responded, Sem jumped up and started to scream obscenities; he pulled a knife from his coat, taken from Wysong's kitchen, and began stabbing Levi in the chest. Levi was stabbed multiple times in the heart, lung, and liver. The blade broke off in Levi's chest and Levi died later that evening.

B. *Procedural History*

As indicated, plaintiffs filed the present state court action on February 27, 2006. On March 29, 2006, MUM made a special appearance in the state court action by filing a notice of removal to federal court. In the notice, MUM specifically reserved the right to object to the state court's personal jurisdiction.

5

Subsequently, MUM filed in the federal court a motion for an order: (1) dismissing it from the action for lack of personal jurisdiction, or, alternatively, (2) transferring the action to the Southern District of Iowa. The district court remanded the matter to the Riverside County Superior Court for lack of complete diversity and ruled that MUM's motion to dismiss or, in the alternative, to transfer, was moot.

On June 8, 2006, Maharishi Vedic Education Development Corporation (MVED) and Maharishi Vedic University (California) filed a motion to stay the entire action on the ground of forum non conveniens. The superior court granted the motion pending the outcome of the Iowa action so as to avoid duplicate litigation and potential inconsistent findings of fact and conclusions of law.

In 2008, the District Court of Iowa granted MVED's motion for summary judgment on the ground it was not the alter ego of MUM. Thereafter, MUM settled the Iowa action and in early 2009 the matter was dismissed.

Shortly thereafter, the Riverside County Superior Court lifted the stay in this action and granted plaintiffs' request to propound additional discovery on the jurisdiction issue. After MVED and the other defendants filed a joint demurrer, plaintiffs dismissed them without prejudice.

Approximately two years later, the trial court granted MUM's motion to dismiss the present action for lack of personal jurisdiction. The court concluded that plaintiffs did not meet their burden of showing by a preponderance of the evidence that minimum contacts existed between MUM and California, the forum state. The court ruled that

6

MUM's commercial activity did not impact California on a "substantial, continuours [*sic*] and systematic basis," and plaintiffs' causes of action did not arise out of nor were they related to MUM's contacts with the forum state.

### III.  DISCUSSION

A.  *Jurisdictional Requirements; Standard of Review*

"California's long-arm statute [Code of Civil Procedure section 410.10] authorizes California courts to exercise jurisdiction on any basis not inconsistent with the Constitution of the United States or the Constitution of California."  (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 (*Vons*).)  The United States Supreme Court describes two bases for limiting a state's exercise of personal jurisdiction over nonresidents.  (*Id*. at p. 445.)  "The first recognizes limits on a state's assertion of jurisdiction designed to ensure fairness to nonresident defendants.  The second recognizes the mutual limits on the states' sovereign power to exercise jurisdiction in a federal system."  (*Ibid*.)

"'The exercise of jurisdiction over a nonresident defendant comports with these Constitutions "if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate '"traditional notions of fair play and substantial justice."''"  [Citations.]"  (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1061 (*Snowney*).)  "[T]he minimum contacts test asks 'whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require him to conduct his defense in that State.'  [Citations.]  The test 'is not susceptible of

7

mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present.' [Citation.]" (*Ibid*.)

"Personal jurisdiction may be either general or specific. A nonresident defendant may be subject to the *general* jurisdiction of the forum if his or her contacts in the forum state are 'substantial . . . continuous and systematic.' [Citations.] . . . '[I]t is not necessary that the specific cause of action alleged be connected with the defendant's business relationship to the forum.' [Citations.] Such a defendant's contacts with the forum are so wide-ranging that they take the place of physical presence in the forum as a basis for jurisdiction." (*Vons*, *supra*, 14 Cal.4th at pp. 445-446.)

"'When determining whether specific jurisdiction exists, courts consider the "'relationship among the defendant, the forum, and the litigation.'" [Citations.]'" (*Snowney*, *supra*, 35 Cal.4th at p. 1062.)

Specific jurisdiction exists where "(1) '"the defendant has purposefully availed [itself] of forum benefits"' with respect to the matter in controversy, (2) '"the 'controversy is related to or "arises out of" [the] defendant's contacts with the forum,"'" and (3) the exercise of jurisdiction would comport with fair play and substantial justice." (*DVI, Inc. v. Superior Court* (2002) 104 Cal.App.4th 1080, 1090; *Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269; *Vons*, *supra*, 14 Cal.4th at pp. 446-447; see also *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472, 476.)

When a nonresident defendant challenges the state court's jurisdiction, the plaintiff has the initial burden of "demonstrating facts justifying the exercise of

8

jurisdiction." (*Vons, supra,* 14 Cal.4th at p. 449; *Pavlovich v. Superior Court, supra,* 29 Cal.4th at p. 273.)  If these facts are shown, the defendant must demonstrate that the forum state court's exercise of jurisdiction over the defendant would be unreasonable. (*Pavlovich v. Superior Court*, *supra,* at p. 273.)  When, as here, the relevant evidence is not in conflict, the personal jurisdiction issue is purely one of law, and we independently review the record and determine whether jurisdiction is proper.  (*Ibid.*; *Hall v. LaRonde* (1997) 56 Cal.App.4th 1342, 1346.)

B.  *MUM Did Not Waive Its Right to Contest Personal Jurisdiction*

Plaintiffs first claim that MUM waived its right to object to the state court's personal jurisdiction over it in the present action by making a general appearance in the local federal district court.  Plaintiffs claim MUM made a general appearance in the local federal district court when it asked *that* court to dismiss the present action for lack of personal jurisdiction *or transfer venue to the federal court in Iowa*—before the federal district court remanded the matter back to the state court.  We disagree.  MUM only made a special appearance in the local federal district court and did not waive its right to object to the court's personal jurisdiction over it by joining its motion to dismiss with a motion to transfer venue based on forum non conveniens.

A general appearance in an action operates as a consent to the jurisdiction of the person.  (*Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 52.)  "It has long been the rule in California that 'a party waives any objection to the court's exercise of personal jurisdiction when the party makes a general appearance in the action.'" (*Air Machine*

9

*Com SRL v. Superior Court* (2010) 186 Cal.App.4th 414, 419 (*Air Machine*).) A party makes a general appearance when it "engages in acts or activities that recognize the court's jurisdiction over the party." (*Id*. at p. 426.)

Code of Civil Procedure section 1014[2] provides that: "A defendant appears in an action when the defendant answers, demurs, files a notice of motion to strike, *files a notice of motion to transfer* [*venue*] pursuant to Section 396b, . . . gives the plaintiff written notice of appearance, or when an attorney gives notice of appearance for the defendant. . . ." (Italics added.) "'The statutory list of acts constituting an appearance [under section 1014] is not exclusive; "rather the term appearance may apply to various acts which, under all of the circumstances, are deemed to confer jurisdiction of the person. . . ." [Citation.]'" (*Air Machine, supra,* 186 Cal.App.4th at p. 420; *Dial 800 v. Fesbinder, supra,* 118 Cal.App.4th at p. 53 [noting California courts have found general appearances under varying circumstances in which the defendant seeks affirmative relief].)

Notwithstanding that a defendant may make a general appearance by filing a motion to transfer on the ground of inconvenient forum, the transfer motion does not constitute a general appearance if, prior to or simultaneous with the filing of the transfer motion, the party seeks to dismiss the action for lack of personal jurisdiction. (*Air*

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

*Machine, supra,* 186 Cal.App.4th at p. 426; see § 430.90, subd. (a)(1).)[3] This rule mirrors Federal Rules of Civil Procedure (28 U.S.C.A.) rule 12(b): "No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion."

As indicated, MUM initially removed the present state court action to the local federal district court. In its initial pleading to that court, MUM sought to have the case dismissed for lack of personal jurisdiction and, in the alternative, moved to transfer the case to the federal court in Iowa based on inconvenient forum or forum non conveniens. Because MUM filed its motion to dismiss *simultaneously* with its motion to transfer, it did not waive its right to assert a lack of personal jurisdiction following remand of the matter to the state court. Two California cases are instructive on this point.

In *Air Machine*, the plaintiffs filed a complaint for damages in the Superior Court of San Diego County against the defendants, Air Machine and Health Tech Resources, Inc. (two Washington businesses). (*Air Machine, supra,* 186 Cal.App.4th at p. 417.) Air Machine was dismissed for lack of minimum contacts with California. Health Tech Resources, Inc. also moved to quash service of the summons for lack of personal jurisdiction, but shortly after it filed its motion to quash service, it served on the plaintiff a section 998 offer to compromise and settle the action. (*Id*. at p. 418.) In the trial

---

[3] When, as here, a defendant removes a civil action to federal court without filing a response in the original court, and the case is later remanded for improper removal, the defendant retains the ability to file a motion to dismiss for lack of personal jurisdiction unless he or she made a general appearance in either the state court or the federal court. (§ 430.90, subd. (a)(1).)

11

court's view, the section 998 offer amounted to Health Tech Resources, Inc. availing itself of the laws of the State of California. The trial court accordingly found that Health Tech Resources, Inc. made a general appearance (*Ibid.*) Health Tech Resources, Inc. petitioned for a writ of mandate seeking relief from the trial court's order. (*Id.* at p. 419.)

In concluding that Health Tech Resources, Inc. did not make a general appearance by serving the section 998 offer, the court in *Air Machine* discussed section 418.10 in detail. (*Air Machine, supra,* 186 Cal.App.4th at pp. 425-427.) Among other things, the statute allows a defendant to move to quash service of summons for lack of personal jurisdiction (§ 418.10, subd. (a)(1)), and move to stay or dismiss an action based on inconvenient forum (*id.*, subd. (a)(2)). Subdivision (e)(1) of section 418.10 states: "Notwithstanding Section 1014, no *act* by a party who makes a motion under this section, *including* filing an answer, demurrer, or motion to strike constitutes an appearance, unless the court denies the motion made under this section. If the court denies the motion made under this section, the defendant or cross-defendant is not deemed to have generally appeared until entry of the order denying the motion." (Italics added.)

In construing this language, *Air Machine* concluded that if a motion to dismiss for lack of personal jurisdiction is filed prior to or simultaneously with another pleading, the party will not be deemed to have made a general appearance in the action. (*Air Machine, supra,* 186 Cal.App.4th at p. 426.) The court explained: "[A] party . . . will be deemed to have 'generally appeared' in the

12

action if the party fails to file a motion under subdivision (a) of section 418.10 and otherwise engages in acts or activities that recognize the court's jurisdiction over the party.  If, however, a party files a motion under that subdivision before or simultaneously with an act that would otherwise constitute a general appearance, under subdivision (e) of section 418.10 that party will *not* be deemed to have 'generally appeared' in the action, but instead will be deemed to have 'specially appeared' and not waived the party's jurisdictional challenge." (*Ibid*.)

Also instructive is *Roy v. Superior Court* (2005) 127 Cal.App.4th 337 [Fourth Dist., Div. Two].  There, the plaintiff brought an action in state court against an Illinois corporation and several of its officers, directors, and shareholders.  (*Id*. at p. 340.)  In a joint answer, the defendants asserted 24 affirmative defenses, including one stating: "'The court lacks jurisdiction over these answering defendants because the acts complained of occurred outside of the State of California, these answering defendants are not residents of . . . California, and there was [*sic*] no contacts with the State of California to give the court jurisdiction over these answering defendants.'" (*Ibid*.)  But rather than immediately act on this defense, the answering defendants actively participated in the litigation by filing a case management statement, attending conferences, propounding discovery and filing motions to compel when they were not satisfied with the answers, requesting continuances, and filing a motion for summary judgment.  (*Ibid*.)  Finally, the defendants moved to dismiss the action for lack of personal jurisdiction shortly before the hearing on its motion for summary judgment.  (*Ibid*.)

13

The *Roy* court upheld the trial court's order denying the defendants' motion to dismiss, concluding that the defendants submitted to California's jurisdiction by filing an answer and participating in the litigation. (*Roy v. Superior Court, supra,* 127 Cal.App.4th at pp. 340, 346.) The court pointed out that the defendants had "'buried' their jurisdictional challenge in the middle of literally dozens of mostly boilerplate 'defenses.' They proceeded to vigorously . . . litigate the action, which generated the filing of numerous motions and many appearances, and twice proceeded to the point of setting a trial date. Only then did defendants bring their jurisdictional objection up for actual review and decision . . . . [¶] . . . [B]y requiring that the issue of jurisdiction be raised and finally resolved at an early stage, California's historical approach serves the interests of all parties and of the courts. . . ." (*Id.* at p. 343.) "[A] defendant may move to [dismiss] coupled with *any* other action without being deemed to have submitted to the court's jurisdiction. However, the motion to [dismiss] remains essential." (*Id.* at p. 345.)

Our review of the record has failed to show any merit to plaintiffs' claim that MUM waived its right to challenge the jurisdiction of the state superior court in the present action. Section 418.10 explicitly allows a defendant to move to dismiss an action and simultaneously file a motion that would otherwise constitute a general appearance, without conceding jurisdiction. The Legislature intended that section 418.10 be read broadly to protect a defendant who moves to dismiss by providing that "'*no act*'" by that party shall constitute a general appearance. (*Roy v. Superior Court*, *supra*, 127

14

Cal.App.4th at p. 345.)  A party may move to dismiss, coupled with any other action, without submitting to the court's jurisdiction.  (*Ibid.*)

C. *California Does Not Have Personal Jurisdiction Over MUM*

    1. <u>Levi's Admission</u>

From his home in California, Levi visited defendant's Web site where he read of MUM's teaching of TM.  Following this contact, MUM promptly began recruiting Levi with telephone calls and electronic and written mail; all of the contacts were from Iowa to California and were done so to encourage Levi to enroll for the 2003 fall semester. MUM assured Levi that the admission process could be expedited and completed before classes began in the fall.  On or about August 6, 2003, MUM contacted Levi by telephone advising him that he had been accepted as a full-time undergraduate student; on August 12, 2003, MUM, by way of a written letter, formally notified Levi that he had been admitted.

Plaintiffs received an unsolicited letter from Brad Mylett, director of admissions, which accompanied a brochure entitled:  *Maharishi University of Management Comments from Parents*.  Levi's father spoke to MUM about Levi's admission application and possible financial assistance.  MUM submitted evidence that it did not enter into a written or oral contract with plaintiffs.  Levi's father declared that a contract was entered into on or about August 7, 2003.

2. <u>MUM's Representatives Travel to California</u>

Harry Bright was MUM's director of admissions from 1989 to 1994. He personally made two recruiting trips to California—one trip was in 1988 and one in 1992. He met with prospective students at his hotel, at a TM center, or sometimes in the prospective student's home. On each trip he probably met between 10 and 20 prospective students. Over the years, others from the admissions office made sporadic trips to California. Mylett was the director of admissions from 1994 to 2003. Over this time span he traveled to California three or four times to attend college fairs sponsored by the National Association of College Admissions Counselors. The last trip he made was in the spring of 2003. After 2003, MUM wound down the practice of attending college fairs.

In 1999, Noah Schechtman, and other students, went to Northern California to demonstrate "yogic flying." The students performed 25 demonstrations for approximately 900 people, 800 of whom were high school students; materials on the university may have been handed out. The purpose for the demonstrations was to help promote TM.

3. <u>MUM Doing Business in California Through Its Web site</u>

MUM operates a Web site for posting information, applications for admittance, ordering educational material, and making donations. A person can make a donation online by credit card. Between January 1999 and March 2004 MUM received more than $2 million in donations from California residents. MUM also advertises the school

through a Google search engine. It engaged in other Google AdWords for other sites in 2007, after the alleged events. MUM's Web site allows individuals to print admission application forms or apply for admission online.

MUM does not own any property in California. It is not registered to do business in California, has no agent for service of process in California, does not have a campus in California, has no employees or offices in California, does not have any bank accounts in California and does not pay any taxes in California. However, MUM has more undergraduate students from California than from any state except Iowa.

4. TM Centers in California to Recruit Students

Records show that Bevan Morris is the president of MUM and an officer or president of MVED. MVED is a Massachusetts corporation which maintains its principal place of business in Iowa and is alleged to have connections to TM centers in California. TM centers are separately incorporated and were created to offer educational programs based on the knowledge of Maharishi Mahesh Yogi. TM centers are operated by MVED. MVED does not have a parent-subsidiary relationship with MUM. Individuals who operate the TM centers and universities for the Maharishi refer to each other as "Members of The Movement." "The Movement" is the promotion of the Maharishi teachings via TM. Numerous centers are in the United States, including California, and several other countries.

TM centers provide oral, printed, and multi-media material relative to MUM upon request of interested persons or for alumni in the area. Once in a while a TM center will

17

refer a student to MUM; one such referral of a California resident occurred in 1999. TM centers are not owned by MUM, do not make any payments to MUM, and are not controlled by MUM. Individuals who take California courses at TM centers forward all payments to MVED.

5. MUM Sells and Ships Products Into California

MUM operates Maharishi University of Management Press (MUMPress) as an unincorporated business division with profits flowing directly to MUM. For the past seven years, MUM has relied on e-mail and Web sites to distribute books and CD's for sale. Any customer can order directly from the MUMPress Web site. Gross sales from MUMPress are around $150,000 a year. About 9 percent of those sales are shipped to California.

6. MUM's Distance Educational Classes in California

MUM offers distance education classes. The two-credit courses are jointly offered by MUM and authorized TM centers throughout the United States. In California, the TM program is available only as a noncredit program and MUM does not participate in the offering.

TM centers provide face-to-face teaching and MUM provides videotape lectures. Classes such as "ED 101" and "ED 501" were not taught in California until 2005. Legal counsel asked MUM to cease distance education in California in early 2006.

## IV. ANALYSIS

### A. *General Jurisdiction*

"A nonresident defendant may be subject to the *general* jurisdiction of the forum if his or her contacts in the forum state are 'substantial . . . continuous and systematic.'" (*Vons*, *supra*, 14 Cal.4th at p. 445.) The "defendant's contacts with the forum [must be] so wide-ranging that they take the place of physical presence in the forum as a basis for jurisdiction." (*Id*. at p. 446.) "[C]onduct of single or isolated items of activities" in a state are not sufficient to subject a party to suit on causes of action unconnected from the forum activities. (*International Shoe Co. v. State of Washington, etc.* (1945) 326 U.S. 310, 317.) "The standard for establishing general jurisdiction is 'fairly high,' [citation], and requires that the defendant's contacts be of the sort that approximate physical presence. [Citation.] Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." (*Bancroft & Masters, Inc. v. Augusta Nat. Inc.* (9th Cir. 2000) 223 F.3d 1082, 1086.) "'[I]t is not necessary that the specific cause of action alleged be connected with the defendant's business relationship to the forum.' [Citations.]" (*Vons*, *supra*, at pp. 445-446.)

Plaintiffs submit that general jurisdiction is present based on its following contacts: (1) travel to California to recruit students; (2) the use of TM centers in California to recruit students; (3) doing business in California through its Web sites; (4)

its sales and shipment of materials on TM to California; and (5) its receipt of donations from California residents.  We disagree.  The record does not support a finding that MUM's contacts with California were substantial, continuous, and systematic.  The following cases provide guidance.

In *Hardnett v. Duquesne University* (D.Md. 1995) 897 F.Supp. 920, the plaintiff, a Maryland resident and student at the university, was injured at a rock concert on the defendant's premises.  The defendant university is located in Pennsylvania.  The plaintiff brought suit against the defendant in Maryland.  (*Ibid.*)  Prior to the incident, the plaintiff had requested from the university an application for admission.  The defendant's sole contacts with the State of Maryland were the sending of the application, as well as literature about the university.  After receiving the plaintiff's application, the defendant sent an acceptance letter to the plaintiff and extended a partial scholarship.  (*Id.* at p. 922.)  As stated by the court:  "No claim for general jurisdiction can be constructed on this basis, nor indeed could it be constructed even if it were true . . . that a recruiter had visited a college fair in this State, that a toll free number was available for further inquiries or that video presentations were mailed into the State.  Such contacts, quite simply, are not sufficiently 'continuous and systematic,' to make [the defendant] susceptible to every sort of claim that might be filed in Maryland, including those unrelated to the specific transaction in this case."  (*Id.* at p. 923.)

In *Gehling v. St. George's School of Medicine, Ltd.* (3rd Cir. 1985) 773 F.2d 539, a Pennsylvania resident brought a wrongful death action in Pennsylvania against a

20

university located in the West Indies. (*Id.* at p. 540.) The plaintiff alleged that a media swing through Pennsylvania by two representatives of the school, advertisements through national newspapers, 6 percent of the defendant's students matriculating from Pennsylvania, and several hundred thousand dollars of tuition payments by Pennsylvania students to the defendant were sufficient for purposes of establishing general jurisdiction. (*Id.* at pp. 541-542.) In addition, the defendant had a memorandum of understanding with a Pennsylvania college wherein students from that college could be admitted to the medical school even though they lacked sufficient background in the sciences. (*Id.* at p. 542.) In concluding that Pennsylvania did not have general jurisdiction, the court noted: "[T]he income [the defendant] derive[d] from Pennsylvania is not a result of in-state activities; rather it is the result of the educational services provided by St. George's in Grenada. . . . Moreover [the defendant's] 1980 media swing through Pennsylvania does not demonstrate continuous and substantial activity in Pennsylvania; there is no evidence suggesting that students were solicited during the tour or that the tour was part of a pattern of such visits." (*Id.* at p. 543.)

In *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, *supra,* 223 F.3d 1082, the plaintiff, a computer services company, owned the Internet domain name "masters.org." It brought an action for declaratory relief in California against Augusta National Golf Club, which held the "Masters" trademark. (*Id.* at p. 1084.) While finding that the defendant was subject to specific jurisdiction, the court held that California lacked general jurisdiction over the defendant. In addressing the issue, the court indicated:

21

"[The defendant's] contacts do not qualify as either substantial or continuous and systematic. [The defendant] is not registered or licensed to do business in California. It pays no taxes in California, maintains no bank accounts in California, and targets no print, television, or radio advertising toward California. [The defendant's] masters.org website is 'passive,' i.e., consumers cannot use it to make purchases. Furthermore, [the defendant's] occasional, unsolicited sales of tournament tickets and merchandise to California residents are insufficient to create general jurisdiction." (*Id.* at p. 1086.) [E]ngaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." (*Ibid.*)

*Zippo Mfg. Co. v. Zippo Dot Com, Inc*. (W.D.Pa. 1997) 952 F.Supp. 1119 involved a dispute over the use of various domain names. While the case dealt with specific jurisdiction, as opposed to general jurisdiction, its discussion as to the interrelationship between the Internet and personal jurisdiction is helpful. "'[A]s technological progress has increased the flow of commerce between States, the need for jurisdiction has undergone a similar increase.' [Citation.]" (*Id.* at p. 1123.)

"[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. . . . At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.

22

[Citation.] At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. [Citation.] The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. [Citation.]" (*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, *supra*, 952 F.Supp. at p. 1124.)

Where a defendant clearly does business over the Internet involving knowing and repeated transmissions, courts will find general jurisdiction. In *Gator.com Corp. v. L.L. Bean, Inc.* (9th Cir. 2003) 341 F.3d 1072, the court found general jurisdiction as a result of the defendant's Web site activity. (*Id.* at p. 1082.) The defendant was based in Maine; the plaintiff was based in California. (*Id*. at pp. 1074-1075.) The defendant sold over $1 billion in products annually worldwide; $200 million, or 16 percent, through its Web site. (*Id*. at p. 1074.) Through the mail, telephone, and Internet, the defendant sold $2 million worth of products in California. (*Ibid*.)

While the defendant was not authorized to do business in California, had no agent for service of process in California, and did not pay taxes in California, the court looked to the "economic reality" of the defendant engaging in substantial solicitation in California, including national print and broadcast, and the maintenance of numerous "on-

23

line" accounts for California residents, to support the conclusion that California had general jurisdiction. (*Gator.com Corp. v. L.L. Bean, Inc., supra,* 341 F.3d at pp. 1074, 1077.)

Here, as the Maryland court found in *Hardnett*, sending literature, acceptance letters, and recruiters to the forum state is not substantial and continuous. Nor was it held to be substantial and continuous to advertise through national newspapers or have media swings.

The fact MUM has a somewhat interactive Web site is also insufficient when viewed with the other evidence. Determined by the sliding scale presented in *Zippo*, MUM's Web site presence would be considered a middle ground Web site at most when examining its level of interactivity and commercial nature of information exchanged. MUM's Web site, including MUMPress, allows any person who visits the Web site to purchase MUM merchandise, apply by application to the school, and derives, in total, 9 percent of its annual sales from California ($13,500 per year from 2006 to 2011). MUM does not participate in extensive marketing in California, does not maintain a "highly interactive" Web site, and the Web site does not store passwords nor users' personal information as it did in *Gator.com Corp.*, which was a close case to determine. In contrast to *Gator.com Corp.*, MUM has not mailed a substantial number of advertisements to California residents nor have they specifically targeted California residents; in addition, MUM has not participated substantially in California's market.

MUM's Web site does allow purchases via credit card over the Internet, but sales are minimal.

MUM's business is located in Iowa. It maintains no offices, employees, or agents in California. MUM's advertisements consist of its Web site, pamphlets and brochures, mail, and telephone calls, most of which are solicited; very small amounts are unsolicited, as is the case in *Bancroft & Masters, Inc*. MUM also received approximately $2 million in donations from 1999 to 2004, but plaintiffs fail to provide evidence of active solicitation for these donations. Although *Bancroft & Masters, Inc.* had a completely passive Web site, the court held its unsolicited sales of tournament tickets and merchandise to California residents was insufficient to create general jurisdiction. In the present case, MUM generally sent pamphlets and brochures to California upon requests or for alumni in the area. It was not a "blanket" advertisement to California residents.

Furthermore, MUM is not authorized to do business in California, has no agent for service of process in California, and is not required to pay taxes in California. Although plaintiffs claim the TM centers represent a physical presence of MUM in California, they provide no evidence of the claim. The TM centers are operated by MVED, a separate and nonprofit corporation in Massachusetts. There is no parent-subsidiary relationship between the TM centers and MUM. MUM receives no funds from the TM corporation. In 2005, MUM began to offer distance learning lectures on videotape at TM centers. Plaintiffs provide no other connection to the TM centers except requests for brochures by interested prospects and sporadic referrals.

25

Under the sliding scale analysis, MUM's contacts with California are insufficient to confer general jurisdiction. MUM's Web site is not highly interactive nor extensive. The $13,500, or 9 percent, of annual revenue and minimal unsolicited advertising in California does not qualify as substantial, systematic, and continuous commercial activity.

We also find it unreasonable to compel MUM to defend the case in California. MUM has not purposefully and substantially interjected itself into the California market. The minimal sales of school merchandise to anyone who has Internet is not a compelling case; engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates a physical presence. Haling MUM into California for small advertising, accepting residents to the university, and selling small amounts of merchandise over the Internet would open the doors for MUM to be haled into any court in the nation.

The traditional notions of fair play and substantial justice would not be satisfied here. Colleges and universities typically have limited contacts with practically every state in the nation. (See, e.g., *Khalil v. Chatham College* (S.D.Tex. 2005) 391 F.Supp.2d 588, 593-594; *Rodi v. Southern New England School of Law* (D.N.J 2003) 255 F.Supp. 2d 346, 349-351.) Universities draw their students from all across the country; plaintiffs' theory would subject them to suit on nonforum related claims in every state where a member of the student body resides. Furthermore, all of the witnesses, evidence, and parties to the lawsuit are located in Iowa except for plaintiffs. Plaintiffs brought this

26

action in California because at the time the lawsuit was brought, Iowa did not have a wrongful death cause of action available and the statute of limitations was running to its end. Although there is no alternative forum, we affirm the trial court's finding that California lacks general jurisdiction over MUM.

B. *Specific Jurisdiction*

Plaintiffs allege the trial court erred when it found MUM was not subject to specific jurisdiction in California. Plaintiffs contend MUM purposefully availed itself of forum benefits and that the controversy is related to or arises out of its contacts with California. We disagree.

"'A court may exercise specific jurisdiction over a nonresident defendant only if: (1) "the defendant has purposefully availed himself or herself of forum benefits" [citation]; (2) "the 'controversy is related to or "arises out of" [the] defendant's contacts with the forum'" [citations]; and (3) "'the assertion of personal jurisdiction would comport with "fair play and substantial justice"'" [citations].'" (*Snowney*, *supra*, 35 Cal.4th at p. 1062.)

In *Snowney*, a California resident filed an action against a group of Nevada hotels for failing to provide notice of an energy surcharge imposed on hotel guests. These hotels conduct no business and have no bank accounts or employees in California; they do advertise heavily in California and obtain a significant percentage of their business from California residents. (*Snowney, supra,* 35 Cal.4th at p. 1059.) The advertisements include billboards located in California, print ads in California newspapers, and ads aired

27

on California radio and television. These hotels also maintain an Internet Web site and a toll-free telephone number where visitors or callers may obtain room quotes and make reservations. The court held these activities were sufficient for personal jurisdiction. (*Ibid.*)

The defendants were incorporated in either Nevada or Delaware and maintained their principal place of business in Nevada. The defendants acknowledged they were licensed to do business in California with a wholly owned subsidiary operating in California. (*Snowney, supra,* 35 Cal.4th at p. 1060.) The court found that by soliciting and receiving patronage of California residents through their advertising activities, the defendants have purposefully directed their activities at California residents, have purposefully derived a benefit from their contacts with California, and have established a substantial connection with this state. (*Id.* at pp. 1060-1061.) Second, the court found the defendants' California contacts were substantially connected to the causes of action that challenge an alleged mandatory surcharge imposed on a hotel guest. Finally, the exercise of jurisdiction over the defendants would be fair and reasonable. (*Id.* at p. 1061.)

"'"'The purposeful availment inquiry . . . focuses on the defendant's intentionality. [Citation.] This prong is only satisfied when the defendant purposefully and voluntarily directs [its] activities toward the forum so that [it] should expect, by virtue of the benefit [it] receives, to be subject to the court's jurisdiction based on" [its] contacts with the forum.' [Citations.]" (*Snowney, supra,* 35 Cal.4th at pp. 1062-1063.) In other words, it

28

creates a substantial connection with the forum, or engages in significant activities within the forum. (*Id*. at p. 1063.)

In the present case, MUM's contacts are insufficient to establish purposeful availment. MUM is not incorporated in California, is not licensed to do business in California, does not conduct substantial advertisement or business in California, and has not established a substantial connection with California. We begin by examining MUM's Internet Web site. As mentioned, MUM's Web site falls under the middle category of the *Zippo* sliding scale of interactive Web sites. "'Some courts have held that sufficient minimum contacts are established, and the defendant is "doing business" over the Internet, where the defendant's website is capable of accepting and does accept purchase orders from residents of the forum state.' [Citation.]" (*Snowney, supra,* 35 Cal.4th at p. 1064.) "Other courts have suggested that '"something more"' is necessary, such as '"deliberate action" within the forum state in the form of transactions between the defendant and residents of the forum or conduct of the defendant purposefully directed at residents of the forum state.' [Citations.]" (*Ibid*.) We follow the latter.

"'[T]here must be evidence that the defendant "purposefully availed" itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts.'" (*Snowney, supra,* 35 Cal.4th at p. 1064, quoting *Toys "R" Us, Inc. v. Step Two, S.A.* (3d Cir. 2003) 318 F.3d 446, 454.) The case at hand does not rise to the highly interactive Web site and advertisement in *Snowney*. MUM does not

29

specifically target California residents nor does the Internet activity reflect a substantial business transaction with the residents of California. MUM conducts minimal business via the Internet with California residents, not enough to subject them to personal jurisdiction. MUM does not obtain a significant percentage of their business from California residents because of their advertising or recruiting trips. Indiscriminate advertising and small amounts of sales are not sufficient to show purposeful and voluntary availment to the forum state.

"We now turn to the second prong of the test for specific jurisdiction . . . , and determine whether the controversy is related to or arises out of defendants' contacts with California." (*Snowney, supra,* 35 Cal.4th at p. 1067.) We find it does not.

The California Supreme Court adopted a "substantial connection" test and held the relatedness requirement is satisfied if "'there is a substantial nexus or connection between the defendant's forum activities and the plaintiff's claim.'" (*Snowney, supra,* 35 Cal.4th at p. 1068.) "'[F]or the purpose of establishing jurisdiction the intensity of forum contacts and the connection of the claim to those contacts are inversely related.'" (*Ibid.*) "'[T]he more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim.' [Citation.] . . . '[a] claim need not arise directly from the defendant's forum contacts in order to be sufficiently related to the contact to warrant the exercise of specific jurisdiction.'" (*Ibid.*) "'"'[O]nly when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact].'"'" [Citations.]"

30

(*Ibid*.)  In *Snowney*, "[b]y purposefully and successfully soliciting the business of California residents, defendants could reasonably anticipate being subject to litigation in California in the event their solicitations caused an injury to a California resident." (*Id*. at p. 1069.)

The present case is directly analogous to *Roman v. Liberty University, Inc.* (2008) 162 Cal.App.4th 670 [Fourth Dist., Div. Two] (*Roman*).  In *Roman*, the plaintiff, through his guardian ad litem, filed an action for personal injury damages in the superior court of the State of California.  (*Id.* at p. 674.)  The complaint alleged the defendant's recruiting coordinator came from Virginia to California to recruit the plaintiff to play football and offered him a football scholarship; the plaintiff accepted.  The plaintiff executed an athletic scholarship agreement in California.  (*Ibid.*)

The plaintiff, while in Virginia, had a roommate who also played football.  The plaintiff and roommate had a history of leaving campus to drink alcohol after curfew. (*Roman, supra,* 162 Cal.App.4th at p. 674.)  The plaintiff was disciplined with revocation of his scholarship, but the defendant did not enforce it and the plaintiff continued to play football.  The plaintiff requested a new roommate because of these problems, but the defendant never addressed the request.  (*Ibid*.)

The plaintiff and his roommate went out drinking again and the roommate physically assaulted the plaintiff.  The plaintiff started to walk back to campus and fell from a train trestle; he sustained catastrophic brain injuries.  (*Roman, supra,* 162 Cal.App.4th at p. 674.)  The plaintiff claimed that the defendant breached a legal duty

31

owed to him because it failed to: (1) separate the plaintiff and his roommate when requested; (2) remove the roommate from campus; (3) provide a safe and supportive environment; and (4) confront the roommate regarding his various infractions. (*Ibid*.) *Roman* concluded that the trial court did not err in granting the defendant's motion to quash for lack of personal jurisdiction. (*Id*. at p. 681.)

The court examined whether defendant purposely availed itself of the benefits of doing business in California such that it could expect to be subject to the jurisdiction of California courts. (*Roman, supra,* 162 Cal.App.4th at p. 681.) The plaintiff argued that not only did the defendant recruit the plaintiff in California and offer him a scholarship, the agreement was executed in California; in addition, the defendant recruited his roommate from California. Furthermore, the defendant routinely recruited student athletes in California; seven male students from California play sports at the defendant university. Finally, the defendant's Web site advertises an online degree program that allows students from any state to take courses. (*Id*. at p. 680.)

The court found the plaintiff provided no support that the roommate was recruited in California. Moreover, the defendant's seven California students on its team roster provide no basis for specific jurisdiction over the defendant in California because no showing was made that those students were recruited in California. (*Roman, supra,* 162 Cal.App.4th at p. 680.) The plaintiff provided no evidence that the defendant had enrolled any California residents in its online degree program. Thus, the only contact established was that the defendant's recruiting coordinator visited the plaintiff in

California and mailed plaintiff scholarship agreements, which were executed in California. This conduct does not establish "purposeful availment." (*Ibid*.)

Similarly here, plaintiffs claim sporadic recruitment by MUM, brochures, advertisements on Web sites, and occasional recruiting trips satisfy purposeful availment. We disagree. In fact, the defendant in *Roman* physically and specifically went to California to recruit the plaintiff, while in the present case, MUM merely sent a letter, brochure, and made a telephone call to California, with no physical presence in California except for the Northern California college fairs. In addition, the application agreement was executed by Levi in California, as in *Roman*. Furthermore, plaintiffs fail to provide substantial evidence that TM centers recruited students who enrolled at MUM. MUM does offer distance learning classes, as in *Roman*, but plaintiffs do not point to any California residents participating before 2005 or who have enrolled in the school thereafter. Therefore, as held in the case cited above, without much more, this conduct does not establish purposeful availment.

Examining the second prong of the test for specific jurisdiction, the relatedness requirement, the *Roman* court found the controversy was unrelated to and did not arise from the defendant's contacts with California. The plaintiff's claims are for personal injuries based on alleged activities that took place entirely within Virginia. (*Roman, supra,* 162 Cal.App.4th at p. 680.)

*Roman* relied on *Snowney* to support a finding of jurisdiction. However, the court found it distinguishable on its facts. *Snowney* was a class action brought by California

33

residents against a group of Nevada hotels alleging fraudulent business practices, breach of contract, unjust enrichment, and violations of Business and Professions Code, based on the hotels failing to provide notice of an energy surcharge imposed on guests. (*Roman, supra,* 162 Cal.App.4th at pp. 680-681.) Although the hotels did not conduct business in California, they advertised heavily in California, received a significant portion of their business from California residents, and touted their close proximity to California. (*Id*. at 681.) The *Snowney* court held both that (1) the conduct of the hotels purposefully and voluntarily directed their activities toward California in such a way they should expect to be subject to jurisdiction in California, and (2) the injury suffered by the plaintiff relates directly to the content of the defendant's advertising in California. (*Ibid*.)

In *Roman*, in contrast, the plaintiff showed only that the defendant's recruiter made a single visit to California and the scholarship agreements were executed in California. The nexus between the defendant's activities in California and the injury to the plaintiff was so attenuated as to be virtually nonexistent. (*Roman, supra,* 162 Cal.App.4th at p. 681.)

The present case arises out of Levi's death in Iowa. Prior to his death, MUM's faculty and students visited California three to four times for recruiting or college fairs over a span of decades. In addition, MUM advertised itself through its Web site, brochures, and word of mouth throughout the country. MUM did not specifically direct any solicitation toward Levi until after Levi showed interest in the university. No

representatives of MUM directly visited Levi in California; the director of admissions of MUM spoke with Levi on the telephone and then sent a letter of acceptance to California.

Furthermore, plaintiffs provided no evidence of a contract. Regardless, a contract formed by MUM and plaintiffs in California does not create a nexus between MUM's contacts with California and Levi's death in Iowa. Plaintiffs did not show California residents were solicited by TM centers in California and attended MUM thereafter. MUM offered distance education classes at TM centers all around the country from 2005 to 2006. MUM allowed current students at the Iowa campus to earn credits in California; plaintiffs provided no other evidence of solicitation or advertisement directed to California or any other state. In any event, the TM centers had no connection with Levi's death. We find MUM did not purposefully and voluntarily avail itself to California in such a way that it should be expected to defend this suit in this forum.

We hold, as we did in the general jurisdiction analysis, that it would be unfair or unreasonable to exercise jurisdiction over MUM in this state. We conclude the trial court did not err in granting MUM's motion to dismiss for lack of personal jurisdiction.

## V.  DISPOSITION

The judgment is affirmed. Each party shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.